UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTHONY SAMUEL TOTA,

          Plaintiff,

                                              **Hon. Hugh B. Scott**

          v.                                           06CV514S

                                               **Order**

DAVID W. BENTLEY, et al.,

          Defendants.

Before the Court are (a) Chautauqua County defendants' motion to compel plaintiff (proceeding pro se) to answer discovery demands (Docket No. 96[1]) and (b) plaintiff's cross motion to withhold documents from discovery (Docket No. 102) and for a protective Order (Docket No. 103). Responses to defendants' motion were due on or before January 15, 2008, and any reply was due on or before January 22, 2008, and the motion then was deemed submitted (without oral argument) (Docket No. 99). With plaintiff's motions, responses to them were due by February 1, 2008, with reply by February 8, 2008, and all three motions were deemed submitted (without oral argument) on February 8, 2008 (Docket No. 105).

---

[1] In support of this motion, defendants filed their attorney's affidavit, Docket No. 96, and sets of exhibits, Docket Nos. 97 (originally filed as a "motion"), 98 (refiled as exhibits).

In opposition, plaintiff filed his cross motion to withhold documents, Docket No. 102; motion for a protective Order, Docket No. 103; and a response to the defense motion, Docket No. 104, including a corrective document (adding a missing page with his mailing address), Docket No. 107, and a discovery letter, dated Jan. 2, 2008, Docket No. 106, noting the underlying discovery dispute and his attempt to resolve it and to contact defense counsel in order to resolve it.

## BACKGROUND

Familiarity with the facts from prior Orders in this case (see, e.g., Docket Nos. 12, 37, 64, 92) is presumed.  Plaintiff filed his Complaint on July 31, 2006, alleging that, on August 4, 2003, special weapons and tactics teams from the Jamestown Police Department and Chautauqua County Sheriff's Department used excessive force upon him (see Docket No. 1, Compl.).  The original Complaint named as defendants the municipal governments, Jamestown police officer Franzen, Chautauqua County Sheriff's deputy David Bentley, John Doe Jamestown Police Department Special Weapons and Tactics officers, and John Doe Chautauqua County Sheriff's Department Special Weapons and Tactics ("SWAT") officers (id.).  Plaintiff alleges that, during the entry of the SWAT teams, he was "permanently" injured with respect to his back, right eye, and right shoulder blade (id. attachment, Statement of Claim ¶¶ 1, 4-6), then, after handcuffed and removed from his house, plaintiff alleged that he was thrown to the ground and kicked and billy clubbed on his head and body and an officer climbed on his back and jumped up and down upon it (id. ¶¶ 13, 14).  Plaintiff sought punitive damages against defendants in the initial Complaint (id. at 5) without specifying in the summary of relief sought whether he was claiming damages for medical or other injuries (compare id. at 5 with id. at 3-4, attachment pages 4-8 (claims alleged)).  The initial Complaint did not allege any emotional or psychological injuries.

Chautauqua County, Bentley, and county SWAT John Doe officers answered the initial Complaint on September 27, 2006 (Docket No. 3).  The City of Jamestown answered on October 30, 2006 (Docket No. 8).  The John Doe Jamestown Police Department SWAT officers and named SWAT officer Franzen had not appeared (cf. Docket No. 25, Jamestown Motion to Opt Out of Alternative Dispute Resolution, for defendants Jamestown and "all related City of

Jamestown Officers and/or SWAT Officers"). After seeking discovery to identify John Doe defendants (Docket Nos. 9, 28), plaintiff moved for leave to amend the Complaint (Docket No. 78), which was granted (Docket No. 92). Plaintiff filed his Amended Complaint on December 3, 2007 (Docket No. 94). Plaintiff asserts claims against Bentley and eight other named Sheriff's Department officers[2] and apparently drops claims against Chautauqua County, the City of Jamestown, and employees of the Jamestown Police Department (including Franzen and the unknown John Doe city officers). According to his Amended Complaint (Docket No. 94), plaintiff seeks compensatory and punitive damages for his physical injuries as the result of the alleged excessive use of force by county SWAT officer Bentley and the other named Chautauqua County Sheriff's Department officers (id. at 5, 1, 6-7). Again, the Amended Complaint does not assert any claim for emotional or psychological injuries.

*Present Motion*s

The Chautauqua County defendants then moved to compel plaintiff to supply medical authorizations and reports (Docket No. 96).

Following the August 3-4, 2003, incident, plaintiff was arraigned and later ordered for temporary psychiatric observation at the Rochester Psychiatric Center (Docket No. 96, Chautauqua County Defs. Atty. Aff. Ex. B, Pl. EBT Tr. at 9-12). When deposed in this action, plaintiff was asked about these stints in the Rochester Psychiatric Center, plaintiff asserted a privilege and refused to answer (id. at 12-14), asserting that he put his physical condition, not his mental condition, at issue in this case (id. at 14). Plaintiff testified that he had no recollection of

---

[2]These defendants are Steven Anderson, Bryan Burmaster, John Desnerck, Jeffrey Hover, Steven Madonia, Jeffrey Nelson, James Rensel, Dale VanVlack.

the day leading up to the August 3-4, 2003, incident (Docket No. 96, Chautauqua County Defs. Atty. Aff. ¶ 7). Plaintiff then declined to testify about his mental state on August 3, 2003, again asserting privilege (id. ¶ 6, Ex. B, Pl. EBT Tr. at 33).

After the deposition, plaintiff filed an "Assertion of Claim of Privilege" (id. ¶ 8; Docket No. 93) in which plaintiff asserted the psychiatrist-patient privilege for communication (his deposition of November 8, 2007) discussing his medication and treatment while confined at the Rochester Psychiatric Center (id. ¶¶ 5, 6). In his motion for a protective order, plaintiff lists a privilege log identifying the four competency reports and a psychiatric evaluation report (Docket No. 103, Privilege Log, at page 17 of 57).

Defendants argue, however, that plaintiff placed his psychiatric condition at issue in suing here, with his psychiatric condition going to his perception and recollection of events of August 2003 (Docket No. 96, Chautauqua County Defs. Atty. Aff. ¶¶ 6, 7). They argue that plaintiff's psychiatric condition is "extremely important in the defense of this matter" (id. ¶ 7). Defendants deny plaintiff has any privilege once he sued in this action (id. ¶ 9). They object to plaintiff's failure to sign medical authorizations and service of plaintiff's complete medical records (id. ¶¶ 10-12, 13, 15).

Plaintiff then filed (without proofs of service) his motions to allow him to withhold documents from discovery (Docket No. 102) and for a protective Order (Docket No. 103). Both motions oppose producing plaintiff's psychological records as irrelevant to his action and state that he has attempted to produce his other medical records and has produced other discovery and denies that sanctions are warranted.

**DISCUSSION**

I.    Standard

Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention. See 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d ed. 1994). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Initial disclosure includes producing "a copy of, or a description by category and location of, all documents . . . that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims . . . ." Fed. R. Civ. P. 26(a)(1)(B).

Federal Rule 26(b)(2)(i) allows this Court to limit the scope and means for discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Under Rule 26(c), this Court may issue a protective order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense" by not having a proposed disclosure or discovery device, or conditioning the time and manner of that discovery. Fed. R. Civ. P. 26(c)(1), (2)-(3); see id. R. 26(c)(4) (limit the scope or the matters inquired into).

Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an order compelling discovery, with that motion including a certification that the movant in good faith

conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed. R. Civ. P. 37(a)(2)(A). Similarly, under Rule 26(c), prior to obtaining a protective order the movants must certify that they have in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court intervention, Fed. R. Civ. P. 26(c). Under Rule 26(c), the Court has power to protect against abuses in discovery. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984). The appropriateness of a protective Order is a balance of the litigation needs of the requesting party and the protectable interests of the party from whom discovery is sought. Mitchell v. Fishbein, 227 F.R.D. 239, 245 (S.D.N.Y. 2005). This Court has broad discretion in issuing such a protective Order. Seattle Times, supra, 467 U.S. at 36.

II.     Chautauqua County Defendants' Motion to Compel

Here, defendants claim that both plaintiff's claims and their defenses depend upon production of plaintiff's psychological records, his execution of medical authorizations, and production of his complete medical records.

As for plaintiff's medical records and authorizations to release such records (as opposed to his psychological or psychiatric records), defendants are entitled to these records to confirm the extent of plaintiff's physical injuries due to the alleged incident and these shall be produced forthwith. On the medical records, plaintiff states that he has difficulties obtaining the records from his medical providers (see Docket No. 103, Pl. Decl. ¶ 25). Plaintiff is to produce what he has and is reminded of Rule 26(e) and his continuing duty to supplement his disclosure as he received records. Fully executed medical authorizations issued to defense counsel may also

assist in producing plaintiff's medical records, since defense counsel can obtain the materials and may have a better ability to obtain them from plaintiff's providers.

As for plaintiff's psychological or psychiatric records, consideration of whether they should be produced will be discussed below in considering plaintiff's motion for a protective Order. Regarding plaintiff's contention that this Court's earlier Order (Docket No. 64) did not specify release of psychological records (Docket No. 103, Pl. Decl. ¶ 5b.), although defendants did not include the demands for medical authorizations in their motion to compel (cf. Docket No. 54) or file the demands with the other discovery as required by this Court's Local Civil Rules, W.D.N.Y. Loc. Civ. R. 7.1(a)(1), the Court will address defendants' demand.

III.     Plaintiff's Motions

Both of plaintiff's motions seek to prevent disclosure of his mental condition (Docket Nos. 102, 103). Federal courts recognize a psychotherapist-patient privilege, see Jaffee v. Redmond, 518 U.S. 1, 10-17 (1996), which appears to be the privilege plaintiff is invoking to protect his disclosure of certain psychiatric evaluations he underwent following the August 2003 incident as well as his overall psychological history. This privilege, like others, is waivable

   A.     Withholding of Documents

The first motion seeks to preclude discovery of these documents until the Court determines whether they are ultimately admissible (Docket No. 102, Pl. Decl. ¶ 7), citing a separate action plaintiff commenced in this Court, Tota v. Abdella, No. 06CV636S, contesting the actions of defendant (then a Jamestown City Court judge) in ordering plaintiff to be held for competency examinations (Docket No. 102, Ex. A, Abdella, 06CV636S, No. 1, Compl.). But discovery is broader than admissibility. Under Rule 26(b)(1), "parties may obtain discovery

7

regarding any matter, not privileged, that is relevant to the claim or defense of any party," and "for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information **need not be admissible at the trial** if the discovery appears reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1) (Dec. 1, 2007) (emphasis added). Thus, the test for excluding production of discoverable material is not admissibility as plaintiff argues. Plaintiff's motion to withhold documents (Docket No. 102) is **denied**.

      B.      Protective Order

Plaintiff's second motion seeks a protective Order against disclosure of these documents (Docket No. 103). Plaintiff argues that this Court's Order (Docket No. 64) to compel his execution of authorizations and answer defense Interrogatories did not include authorizations now sought by defendants (Docket No. 103, Pl. Decl. ¶ 5b.). Plaintiff states that defense counsel never served requests for these authorizations (id. ¶ 5c.). He argues, for the first time, that the Court had no basis to order him to authorize medical releases because the demands for them were never filed with the Court and plaintiff cannot be sanctioned prior to an Order requiring compliance (id. ¶ 6).

Plaintiff denies that his Complaint sought damages for any psychological injury (id. ¶ 7, Exs. F, G). He argues that defendants' questions about his psychological records "amounted to harassment and oppression of the Plaintiff" (id. ¶ 10). He attaches medical authorizations he

executed with three of his medical providers (id. at page 10, "Conclusion," Exs. X-Z), but these only authorize release to him and not to defense counsel[3].

Disclosure of the psychological history of a civil rights plaintiff is allowed to respond to emotional distress claims and are not to be used for fishing expeditions in non-related matters, see Bridges v. Eastman Kodak Co., 850 F. Supp. 216, 221-22 (S.D.N.Y. 1994) (Docket No. 103, Pl. Decl. ¶ 12, Ex. J). Plaintiff denies that he placed his mental history at issue in this case, thus his psychological records are not relevant to his claims or any defenses defendants may raise (id. ¶ 21). He contends that disclosure of these records would create undue embarrassment to him (id. ¶ 22) and be oppressive and prejudicial to his claims here (¶ 23).

Plaintiff is correct, he has not alleged psychological injuries that would open his mental state to discovery. Plaintiff only alleges physical injuries and not any emotional claims that would expose his mental state to further inquiry. Unlike the separate Abdella action (where he contests the decision of defendant judge there in ordering his competency to be evaluated and production of the subsequent evaluations may lead to relevant, admissible evidence, cf. Fed. R. Civ. P. 26(b)(1)), the only injuries alleged here are physical. Plaintiff's ability to recall that incident or the alleged results is not impacted by subsequent psychological evaluations to make that portion of his condition relevant or lead to relevant evidence. Defendants' inquiries into plaintiff's psychological history will not lead to discovery of admissible evidence to support defenses or plaintiff's physical injury claims. Thus, plaintiff is **not required** to execute medical authorizations for release of his psychological records and he is **not required** to produce these

---

[3]Exhibit X is a request for film or CD for pick up, again only by plaintiff, for images in October 2001, years before the incident at issue in this case.

psychological records.  Defendants motion to compel that production and execution (Docket No. 96) is **denied** and plaintiff's motion for a protective Order (Docket No. 103) is **granted** as to plaintiff's psychological or psychiatric records.  Despite above denying plaintiff's earlier motion to withhold documents (Docket No. 102), the result of granting his motion for a protective Order (Docket No. 103) will have the effect of precluding disclosure of his psychological records in this case.

## CONCLUSION

For the reasons stated above, the Chautauqua County defendants' motion to compel (Docket No. 96) is **granted in part** (to have plaintiff produce medical records and execute medical authorizations–as opposed to psychiatric or psychological authorization), **denied in part** (denying production of plaintiff's psychiatric or psychological records).  Plaintiff shall serve and file these authorizations and discovery responses within fifteen (15) days of entry of this Order.  Plaintiff's motion to withhold documents from discovery (Docket No. 102) is **denied**; his motion for a protective Order (Docket No. 103), however, is **granted** as stated above.

So Ordered.

/s/ Hugh B. Scott
Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
February 21, 2008